******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Bright, C. J., and Alvord and Norcott, Js.

*Syllabus*

The incarcerated plaintiff, who owed portions of filing fees for several cases
he had initiated in federal court, appealed to this court from the judgment
of the trial court dismissing his complaint against the defendants,
employees of the Department of Correction, in which he alleged that
they had improperly removed funds from his inmate account to pay the
federal filing fees. The plaintiff's complaint alleged that the defendants
were permitted to withdraw, in monthly installments, only 20 percent
of the relevant balance of his inmate account for filing fees for a single
federal case, not 20 percent of that balance for outstanding filing fees
for each federal action he filed. The plaintiff claimed that the decision
of the United States Supreme Court in *Bruce* v. *Samuels* (577 U.S. 82),
which held that the governing federal statute (28 U.S.C. § 1915 (b) (2))
requires the simultaneous recoupment of multiple filing fees from prison-
ers with at least $10 in their accounts, did not apply to him, as he had
filed his federal actions before that case was decided. The defendants
claimed that the trial court lacked subject matter jurisdiction over the
action because each defendant was entitled to statutory (§ 4-165 (a))
immunity and, with respect to any federal claims the plaintiff alleged,
qualified immunity. *Held* that the trial court properly granted the defen-
dants' motion to dismiss, that court having properly determined that
the defendants were entitled to both statutory and qualified immunity:
the plaintiff's allegations established that the defendants were acting
within the scope of their employment and in accordance with federal
law when they withdrew funds from his account, and, even if the plaintiff
were correct that the holding in *Bruce* did not apply to him, he did not
allege that the defendants' conduct was wanton, reckless or malicious;
moreover, the plaintiff failed to allege facts establishing that the defen-
dants violated his clearly established constitutional rights, as his com-
plaint made no reference to any purported constitutional violation, nor
did he argue to this court that the defendants violated any of his constitu-
tional rights but, rather, he argued that the defendants misapplied the
law in deducting the funds for fees that he acknowledged he owed and
must pay.

Argued October 18, 2021—officially released January 25, 2022

*Procedural History*

Action to recover damages for, inter alia, the alleged
violation of the plaintiff's federal constitutional rights,
brought to the Superior Court in the judicial district of
Hartford, where the court, *Moukawsher, J.*, granted the
defendants' motion to dismiss and rendered judgment
thereon, from which the plaintiff appealed to this court.
*Affirmed.*

*Steven K. Stanley*, self-represented, the appellant
(plaintiff).

*James W. Donohue*, assistant attorney general, with
whom, on the brief, was *William Tong*, attorney gen-
eral, for the appellees (defendants).

*Opinion*

PER CURIAM. The self-represented plaintiff, Steven K. Stanley, appeals from the judgment of the trial court granting the motion to dismiss filed by the defendants,[1] employees of the Department of Correction (department), on the basis of statutory and qualified immunity. The plaintiff claims that the court improperly dismissed his complaint because the immunities relied on by the court do not bar his claims brought against the defendants in their individual capacities. We affirm the judgment of the court.

The following factual, legal, and procedural history is relevant to our analysis. In 2013, the plaintiff was convicted of, inter alia, 100 counts of criminal violation of a protective order, and the court sentenced him to 18 years of imprisonment with 12 years of special parole. See *State* v. *Stanley*, 161 Conn. App. 10, 14, 125 A.3d 1078 (2015), cert. denied, 320 Conn. 918, 131 A.3d 1154 (2016). While incarcerated, the plaintiff initiated several actions in federal court, and he owes portions of the filing fees for those actions to the federal court.

"In the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321–66, Congress placed several limitations on prisoner litigation in federal courts. Among those limitations, Congress required prisoners qualified to proceed in forma pauperis nevertheless to pay an initial partial filing fee. That fee is statutorily set as '20 percent of the greater of' the average monthly deposits in the prisoner's account or the average monthly balance of the account over the preceding six months. . . . Thereafter, to complete payment of the filing fee, prisoners must pay, in monthly installments, '20 percent of the preceding month's income credited to the prisoner's account.' . . . The initial partial filing fee may not be exacted if the prisoner has no means to pay it . . . and no monthly installments are required unless the prisoner has more than $10 in his account . . . ." (Citations omitted.) *Bruce* v. *Samuels*, 577 U.S. 82, 84, 136 S. Ct. 627, 193 L. Ed. 2d 496 (2016). Under title 28 of the United States Code, § 1915 (b) (2), "[t]he agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid."

In *Bruce* v. *Samuels*, supra, 577 U.S. 86–87, a federal inmate who owed filing fees for multiple cases claimed that the monthly installments for his most recent case would not become due until his prior obligations were satisfied. The United States Supreme Court rejected his claim and held "that § 1915 (b) (2) calls for simultaneous, not sequential, recoupment of multiple filing fees." Id., 87.

In the present case, the plaintiff brought an action against the defendants in their individual capacities by

way of a one page complaint, which is difficult to under-
stand. The complaint, titled "Civil Tort Claims Act,"
provides: "I Steven K. Stanley . . . filed a (1983) civil
suit in the federal court[2] and was granted to proceed
in a PLRA account to deduct (only) 20 percent from
my account on all money being on this account to each
time money is put on this account the federal court
granted and stated (only) 20 percent will be deducted
and (only) one case at a time on April of 2019, [the
department] has overcharged this account to take . . .
40 percent from my account I have [repeatedly] filed
to Macdougal, inmate account and even filed grievances
to this fact [the department] inmate account cites a
Connecticut case law trying to overrule the federal rules
of practice and at no time did I give an[y] permission
to take any more than the . . . 20 percent I was granted
to file on a [§] 1983 PLRA account [the department]
cites *Bruce* v. *Samuels*, [supra, 577 U.S. 82] case law
that does not [apply] to this case being filed prior to
this case law [the department repeatedly] denied to
return this extra money there this civil tort claims act is
being generated in a claim to relief Connecticut General
Statutes § 52-91." (Emphasis omitted; footnote added.)
Reasonably construed, the plaintiff alleged that the
defendants improperly exacted more than 20 percent
of available funds from his inmate account to pay for
filing fees owed to the federal court.

The defendants moved to dismiss the complaint,
claiming that the court lacked subject matter jurisdic-
tion over the action because each defendant was enti-
tled to statutory immunity under General Statutes § 4-
165 and, with respect to any federal claims raised in
the plaintiff's complaint, qualified immunity. The defen-
dants argued that "[t]he plaintiff fails to allege any facts
which would indicate the defendants were acting out-
side the scope of their work or with the required mental
state of recklessness or malice. In fact the allegations
show the defendants were specifically following federal
law per the instructions from the [United States]
Supreme Court. As such the defendants are entitled to
statutory immunity . . . ." They further argued that,
insofar as the plaintiff asserted any federal law claims,
those claims were barred by qualified immunity because
the facts alleged by the plaintiff failed to allege that the
defendants violated a clearly established constitu-
tional right.

After hearing argument on the motion, the court
granted the motion to dismiss. The court stated, "[t]he
motion is granted for the reasons cited in the state's
brief. [The] plaintiff's claim that withdrawals from his
account may be taken at a rate of only 20 percent at a
time is plainly no longer true. The law has changed and
has been ruled on by the United States Supreme Court."
This appeal followed.

After oral argument before this court, we ordered

the trial court to articulate whether, in granting the motion to dismiss, it relied on the defendants' claims of statutory and/or qualified immunity and to state the factual and legal bases for its order. The court issued an articulation on October 19, 2021, stating the following:

"[The plaintiff's] claim in this court was about prison officials taking money from his prison account to pay federal court filing fees related to lawsuits [the plaintiff] had filed. [The plaintiff] alleged that the law permitted [the defendants] to take only 20 percent of the relevant monthly balance in his prison account for filing fees regardless how many lawsuits he filed. He claimed that by taking more the defendants were violating his rights.

"This court dismissed [the plaintiff's] claims because this legal premise was false. As the United States Supreme Court held in . . . *Bruce* v. *Samuels*, [supra, 577 U.S. 82], with some nuances not relevant here, prison officials may take 20 percent of a prisoner's relevant account balance *for each lawsuit* the prisoner files. . . .

"Under [the plaintiff's] own allegations, the [defendants] were only doing their jobs. They were allowed by law to take from his relevant account balance money for fees in excess of a cumulative total of just 20 percent per month, and this is all he claims they did.

"Because [the plaintiff's] own claims show this to be so, the defendants are immune from suit under . . . § 4-165, which protects the defendants from liability unless they caused 'damage or injury' by being 'wanton, reckless or malicious.' By alleging facts that show only that the defendants were following the law, [the plaintiff] claims no damage or injury nor wanton, reckless or malicious conduct. . . .

"Courts must dismiss complaints against state officers or employees when the [factual] allegations show the defendants are immune from suit. . . .

"This means the court was obliged to dismiss [the plaintiff's] state law claims. It also means that the court was obliged to dismiss any federal claims [the plaintiff] may have had. As the United States Supreme Court held . . . in *Taylor* v. *Barkes*, [575 U.S. 822, 824, 135 S. Ct. 2042, 192 L. Ed. 2d 78 (2015)], government officials are immune from civil damages under federal law unless they violated a statutory or constitutional right clearly established at the time of the challenged conduct. [The plaintiff's] own complaint alleges facts that, if true, mean the defendants violated none of [his] statutory or constitutional rights. Therefore, the court was obliged to dismiss any federal claims for the same reasons it dismissed the state claims." (Citation omitted; emphasis in original; footnotes omitted.) After the court issued its articulation, this court ordered the parties to file supplemental memoranda responding to the court's articulation.[3]

We begin with the applicable standard of review. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . As we must in reviewing a motion to dismiss, we take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Braham* v. *Newbould*, 160 Conn. App. 294, 300–301, 124 A.3d 977 (2015).

In his principal brief to this court, the plaintiff claims that the trial court improperly determined that the holding of *Bruce* v. *Samuels*, supra, 577 U.S. 82, applies to him because he filed his federal cases before *Bruce* was decided. In the plaintiff's supplemental memorandum, which is not a model of clarity, he also claims that "facts remain the trial court [failed] to address the [petitioner's] 1983 civil tort claims act to color of state law to [filing] in all [defendants'] individual capacity going outside [their] job [authority]." (Emphasis omitted.) For their part, the defendants argue that the court properly dismissed the plaintiff's complaint on the basis of statutory immunity under § 4-165 and qualified immunity. We agree with the defendants.

"[T]he doctrine of [statutory] immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . When a [trial] court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . Because this case comes to us on a threshold [statutory] immunity issue, pursuant to a motion to dismiss . . . we do not pass on whether the complaint was legally sufficient to state a cause of action. . . . In the posture of this case, we examine the pleadings to decide if the plaintiff has alleged sufficient facts . . . with respect to personal immunity under § 4-165, to support a conclusion that the defendant[s] [were] acting outside the scope of [their] employment or wilfully or maliciously." (Internal quotation marks omitted.) *Martin* v. *Brady*, 261 Conn. 372, 376, 802 A.2d 814 (2002).

Section 4-165 provides in relevant part: "(a) No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter. . . ." Thus, "[s]tate employees do not . . . have statutory immunity for wanton, reckless or malicious actions, or for actions not performed within the scope of their employment. For those actions, they may be held personally liable, and a plaintiff who has been

injured by such actions is free to bring an action against the individual employee." *Miller* v. *Egan*, 265 Conn. 301, 319, 828 A.2d 549 (2003).

Accordingly, to overcome the defendants' statutory immunity in the present case, the plaintiff was required to allege facts that would support a conclusion that the defendants were acting outside the scope of their employment or that their conduct was wanton, reckless, or malicious with regard to the withdrawal of money from his inmate account. See *Jan G.* v. *Semple*, 202 Conn. App. 202, 210–11, 244 A.3d 644, cert. denied, 336 Conn. 937, 249 A.3d 38, cert. denied,     U.S.    , 142 S. Ct. 205, 211 L. Ed. 2d 88 (2021).

The gravamen of the plaintiff's complaint is that, each month, the defendants are allowed to withdraw only 20 percent of the balance of his inmate account for filing fees for a single federal case, not 20 percent for each of his federal cases. As the court correctly noted, however, the United States Supreme Court rejected a similar claim in *Bruce* v. *Samuels*, supra, 577 U.S. 82, and, therefore, the plaintiff's allegations establish only that the defendants were acting within the scope of their employment and in accordance with federal law when they withdrew funds from the plaintiff's inmate account. Even accepting the plaintiff's argument that the holding in *Bruce* does not apply to him because he filed his federal actions before *Bruce* was decided, the plaintiff's complaint is devoid of any allegations that the defendants' conduct was wanton, reckless, or malicious. Indeed, the plaintiff alleges that the defendants acted in reliance on *Bruce*. Accordingly, because the facts alleged by the plaintiff do not establish that the defendants either were acting outside the scope of their employment or engaging in wanton, reckless, or malicious conduct, we conclude that the court properly determined that the defendants are entitled to statutory immunity under § 4-165.

The plaintiff's complaint fares no better with respect to his purported federal claims pursuant to 42 U.S.C. § 1983. "Under federal law, the doctrine of qualified immunity shields officials from civil damages liability for their discretionary actions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. . . . Qualified immunity is an immunity from suit rather than a mere defense to liability and, therefore, protects officials from the burdens of litigation for the choices that they make in the course of their duties. . . . Whether an official is entitled to qualified immunity presents a question of law that must be resolved de novo on appeal. . . .

"A court required to rule [on] the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's con-

duct violated a constitutional right? This must be the initial inquiry. . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." (Citations omitted; internal quotation marks omitted.) *Brooks* v. *Sweeney*, 299 Conn. 196, 216–17, 9 A.3d 347 (2010).

Thus, in order to overcome the defendants' qualified immunity in the present case, the plaintiff was required to allege facts that would establish that the defendants violated a clearly established constitutional right. We agree with the court that the plaintiff has failed to do so. The plaintiff's complaint makes no reference to any purported constitutional violation. Similarly, in his briefs to this court, the plaintiff has not argued that the defendants have violated any of his constitutional rights. Instead, the plaintiff alleges that the defendants simply have misapplied the law in deducting funds from his prison account to pay federal court filing fees. Furthermore, the defendant acknowledged during oral argument before this court that he owes those filing fees and that he must pay them. His only issue is with the timing of the payments he owes. Accordingly, because the plaintiff has not alleged a violation of any constitutional right, the court properly determined that the defendants were entitled to qualified immunity and, therefore, properly dismissed any federal law claims against the defendants. See *Braham* v. *Newbould*, supra, 160 Conn. App. 306 ("[b]ecause the facts alleged by the plaintiff do not state a violation of the eighth amendment, we conclude that the trial court properly determined that the defendants are entitled to qualified immunity").

The judgment is affirmed.

[1] We note that the trial case caption misidentifies the named defendant as "Warden Borone." The summons named the following individuals as defendants: "Warden Borone," "Joyce Cosselin," and "C.O. Bennertt." The state marshal's return of service identified the defendants as "Warden Borone," "C.O. Bennertt (aka Counselor Bennett)," and "Joyce Gosselin." In their memorandum of law in support of their motion to dismiss, however, the defendants were identified as Warden Kristine Barone, Gosselin Joyce, and Correction Officer Bennett. Although the parties have been identified differently in the various filings in the trial court, it appears that their correct names are Kristine Barone, Joyce Gosselin, and Correction Officer Bennett.

[2] Title 42 of the United States Code, § 1983, provides a cause of action against "[e]very person who, under color of any statute, ordinance, [or] regulation . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."

[3] The plaintiff filed a supplemental memorandum on November 19, 2021, and the defendants filed their supplemental memorandum on November 29, 2021. On December 14, 2021, the plaintiff filed a "counter brief to defendants' November 29, 2021 filing, supplemental memoranda." Although this court's order did not provide for a responsive filing from the plaintiff, we nevertheless considered the plaintiff's submission in deciding this appeal.